UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| BRIAN HOGUE,<br><br>    Plaintiff,<br><br>v.<br><br>KEITH YORDY and HENRY ATENCIO sued in their official and individual capacities, and SERGEANT JOHN DOE, sued in his individual capacity,<br><br>    Defendants. | Case No. 1:17-cv-00373-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

# INTRODUCTION

Plaintiff Brian Hogue, a prisoner in the custody of the Idaho Department of Correction (IDOC) is proceeding pro se in this prisoner civil rights action. Pending before the Court are nine motions:

    (1)    Defendants' Motion for Summary Judgment (Dkt. 15);

    (2)    Plaintiff's Motion to Strike (Dkt. 18);

    (3)    Plaintiff's Motion for Leave to File an Amended Complaint (Dkt. 23);

    (4)    Plaintiff's Motion for Initial Review of Amended Complaint (Dkt. 25);

(5) Plaintiff's Motion for Ruling on Plaintiff's Motion for Leave to File Amended Complaint Prior to Hearing Defendants' Motion for Summary Judgment (Dkt. 29);

(6) Plaintiff's Objection and Motion to Exclude Declaration of Brian Adams in Support of Defendants' Motion for Summary Judgment (Dkt. 31);

(7) Plaintiff's Renewed Motion to Defer or Deny Defendant's Motion for Summary Judgment Pending the Completion of Discovery and Request for Hearing re Motion for Summary Judgment (Dkt. 32);

(8) Plaintiff's Motion for Finding of Contempt, Imposition of Sanctions, and Request for a Hearing (Dkt. 33); and

(9) Plaintiff's Motion to Disqualify Judge on the Basis of Bias and/or Prejudice (Dkt. 35).

Having reviewed the record and considered the written arguments of the parties, the Court concludes that oral argument is unnecessary. The Court will rule on each of the pending motions below. The key rulings will be as follows: First, the Court will deny Defendants' motion for summary judgment without prejudice. Second, Mr. Hogue will be allowed to conduct limited discovery for a period of 90 days from the date of this Order. At the conclusion of this discovery period, Defendants may renew their motion for summary judgment. Third, Mr. Hogue will be allowed to amend his complaint to correct a clerical error, but he will not be allowed to otherwise amend his complaint at this time.

# BACKGROUND

1. **Factual History**

From September 2016 to June 2017, IDOC facilities operated under Standard Operating Procedure 402.02.01.001 Version 9.0 ("Mail Policy") which restricted inmates from receiving mail in colored envelopes, padded envelopes, or envelopes with stains on them. Dkt. 30-3; Dkt. 30-2. IDOC states the Mail Policy was put in place because illegal substances such as methamphetamines and suboxone can more easily be hidden in or on colored envelopes than white envelopes. Dkt.30-2; Dkt. 15-5.

Brian Hogue is an inmate in the custody of the Idaho Department of Corrections. At all times relevant to this suit, he was housed at the Idaho State Correctional Institution (ISCI) in Ada County, Idaho.

In December 2016, while incarcerated at the ISCI, Mr. Hogue reviewed on a bulletin board a memorandum outlining the change to Mail Policy to ban receipt of colored envelopes. Dkt. 30-1 at 2. Mr. Hogue later reviewed the Mail Policy in the IDOC's Standard Operating Procedures. *Id*. at 3.

On April 7, 2017, a birthday card in a colored envelope sent to Mr. Hogue by his mother was "seized" by staff in the mail room and destroyed. *Id.* at 3, 5; Dkt. 3. Mr. Hogue was notified of that seizure on April 13, 2017. Dkt. 30-1 at 3.

Mr. Hogue soon after filed a concern form. *Id* at 4. On May 8, 2017 he filed

# BACKGROUND

1. **Factual History**

From September 2016 to June 2017, IDOC facilities operated under Standard Operating Procedure 402.02.01.001 Version 9.0 ("Mail Policy") which restricted inmates from receiving mail in colored envelopes, padded envelopes, or envelopes with stains on them. Dkt. 30-3; Dkt. 30-2. IDOC states the Mail Policy was put in place because illegal substances such as methamphetamines and suboxone can more easily be hidden in or on colored envelopes than white envelopes. Dkt.30-2; Dkt. 15-5.

Brian Hogue is an inmate in the custody of the Idaho Department of Corrections. At all times relevant to this suit, he was housed at the Idaho State Correctional Institution (ISCI) in Ada County, Idaho.

In December 2016, while incarcerated at the ISCI, Mr. Hogue reviewed on a bulletin board a memorandum outlining the change to Mail Policy to ban receipt of colored envelopes. Dkt. 30-1 at 2. Mr. Hogue later reviewed the Mail Policy in the IDOC's Standard Operating Procedures. *Id*. at 3.

On April 7, 2017, a birthday card in a colored envelope sent to Mr. Hogue by his mother was "seized" by staff in the mail room and destroyed. *Id.* at 3, 5; Dkt. 3. Mr. Hogue was notified of that seizure on April 13, 2017. Dkt. 30-1 at 3.

Mr. Hogue soon after filed a concern form. *Id* at 4. On May 8, 2017 he filed

an offender grievance, which he attached to the offender concern form. *Id.* On June 14, 2017, he received the level one and level two responses to that grievance. *Id.* On June 21, 2017, he filed his appeal to those responses, exhausting his administrative remedies. *Id.*

### 2. Procedural History

In September 2017, Mr. Hogue filed this lawsuit. Dkt. 3. In the Initial Review Order issued in August 2018, Mr. Hogue was authorized to proceed on a claim that the Mail Policy and seizure violated his First Amendment rights to send and receive mail. Dkt. 9.

Mr. Hogue has since asked the Court for leave to amend his complaint. Dkt. 23. In the First Amended Complaint, Mr. Hogue corrects a typographical error misidentifying the date of seizure. Dkt. 24. He also seeks to add new defendants and Fourteenth Amendment due process claims. *Id.*

After Defendants moved for summary judgment, the Court stayed discovery, explaining that plaintiff would be allowed an opportunity to specifically identify any discovery he believed necessary to respond to the pending motion for summary judgment. *See Feb. 26, 2019 Order,* Dkt. 26. In response, Mr. Hogue says he needs additional discovery to show: (1) that Defendants were personally involved in the Mail Policy; and (2) that the Mail Policy has no rational basis. Dkt. 32-1. Mr. Hogue also says he has not received any initial disclosures and asks the

court to hold defendants in contempt and issue sanctions. Dkt 32; Dkt. 33.

ANALYSIS

A.  **Defendant's Motion for Summary Judgment and Plaintiff's Request to Conduct Discovery**

Mr. Hogue responded to defendants' pending motion for summary judgment with a request to defer under Federal Rule of Civil Procedure 56(d).

1. **Rule 56(d)**

Rule 56(d) gives the Court discretion to defer a motion for summary judgment if a nonmovant "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). Thus, under Rule 56(d) a party seeking discovery has the burden of explaining (1) what further discovery would reveal beyond "pure speculation" and (2) that that discovery is essential to its opposition to the motion for summary judgment. *Stevens v. Corelogic, Inc.*, 899 F.3d 666, 678 (9th Cir. 2018). Granting summary judgment is generally disfavored "where relevant evidence remains to be discovered." *Klingele v. Eikenberry*, 849 F.2d 409, 412 (9th Cir. 1988) (citation omitted). However, where "further discovery could not elicit evidence that would raise genuine issues of material fact, summary judgment would be appropriate." *Id.*

2. **Analysis**

The key issue on summary judgment is whether Mr. Hogue's First

Amendment rights were violated when the greeting card was confiscated. There is no material issue of fact about whether, when, or why the card was confiscated. Mr. Hogue submits that there is a material question as to whether there is a rational basis for the Mail Policy. This is a legal analysis for the court to conduct using factors announced in *Turner v. Safley*, 482 U.S. 78 (1987).

Under *Turner*, a district court considers four factors in determining whether a prison regulation that impinges on inmates' constitutional rights is valid: (1) whether there is a "rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) whether "there are alternative means of exercising the right that remain open to prison inmates"; (3) what "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) whether "ready alternatives" exist. *Id.* at 84.

The first *Turner* factor requires the Court to consider whether there is a "rational connection between the prison regulation and the legitimate governmental interest put forward to justify it." *Id.* at 89-90. The Court must determine (1) whether the governmental interest is legitimate, (2) whether the governmental objective is neutral, and (3) whether the Mail Policy is rationally related to that interest. *Thornburgh v. Abbot*, 490 U.S. 401, 414 (1989).

Defendants identified the interest underlying the Mail Policy: to maintain

institutional security and preserve internal order and discipline by preventing the introduction of contraband into the prison system through colored envelopes. Dkt. 15-5; Dkt. 15-2 at 10. The detention, inspection, and censoring of mail by prison officials in order to uncover contraband is a legitimate penological interest. *Mann v. Adams*, 846 F.2d 589, 591 (9th Cir. 1988). Furthermore, the Mail Policy is unquestionably neutral with regard to the content of the expression because the distinction between prohibited and permitted materials is drawn "solely on the basis of the materials' potential effect on the prison's legitimate objectives." *Mauro v. Arpaio*, 188 F.3d at 1059.

    Defendants have put forward evidence of a rational relationship between the Mail Policy and preserving order by preventing the introduction of contraband. In particular, they point to two pieces of evidence: first, when methamphetamine is sprayed in liquid form onto envelopes it often leaves a slight discoloration which is harder to detect on a colored envelope than on a white envelope; second, suboxone, a prescription opioid, can be bought in the form of orange strips or film which can be hidden in the crease or folds of envelopes and which are, again, more easily concealed in color envelopes than white envelopes. Dkt. 15-5 ¶ 9-10. Defendants had a rational basis to conclude that because colored envelopes concealed contraband more effectively than white envelopes banning colored envelopes would limit contraband being introduced into IDOC facilities through incoming

mail.

Thus, Defendants have met their burdens under the first *Turner* factor. However, if a plaintiff is able to put forward evidence that "refutes a common-sense connection between a prison regulation and the objective that the government's counsel argues the policy was designed to further," the government must then come forward evidence that the connection is not so "remote as to render the policy arbitrary or irrational." *Frost v. Symington* 197 F.3d 348, 357 (9th Cir. 1999) (citations and internal quotations omitted).

As noted above, Mr. Hogue has not yet been able to conduct any discovery in this matter. He identifies numerous subject matters he wishes to take discovery upon, including the following:

(1) incidents in which drugs were found in colored versus white envelopes during 2015-2017, *see Hogue Aff,* Dkt. 32-1, ¶¶ 6, 7, 9, 10;

(2) IDOC communications relating to the purposes for adding the colored-envelope prohibition, *id.* ¶ 8;

(3) the confiscation of the greeting card sent to him, *id.* ¶ 11;

(4) grievances related to the confiscation of the greeting card, *id.* ¶ 12;

(5) "any and all training manuals, procedures, standard operating procedures, policy directives, memoranda, and other documents that relate to detection of drugs concealed in that mail, . . . ." *id.* ¶ 13;

(6) the identity of the mailroom employee who confiscated Mr. Hogue's greeting car, *id*. ¶ 14; and

(7) defendants' experience and personal involvement in the Mail Policy, etc. *id*. ¶ 16.

The Court will allow Mr. Hogue to conduct discovery so that he will have an opportunity to gather evidence in his effort to refute the common-sense connection between the Mail Policy and the prison's objective. More specifically, the Court will allow Mr. Hogue to conduct discovery regarding the reasons the defendants implemented, and later terminated, the Mail Policy. The Court will not undertake the task of crafting appropriate discovery requests on this topic; that will be up to Mr. Hogue. The Court will, however, offer the following observations in an effort to guide the discovery efforts:

Generally, the areas of inquiry Mr. Hogue outlines in his affidavit (Dkt. 32-1) are far broader than what is proportional to the discovery needs of this case and the limited scope of discovery the Court is permitting. Just as one example, Mr. Hogue says he needs to be allowed the chance to ask defendants to turn over every single incident report and other piece of paper related to discovery of contraband in the prison mail during a two-year period. Such a request is overbroad and, more substantively, it is of questionable utility. That is, even if Mr. Hogue is able to demonstrate that the prison historically discovered more drugs in white envelopes than colored ones, that piece of information would not refute the common-sense

connection between the Mail Policy and the objectives, particularly given Defendants' assertions that it was more difficult for prison staff to discover contraband in colored envelopes than in white ones. Other than making this general observation, the Court will leave it to the parties to agree upon the appropriate discovery requests that will allow Mr. Hogue to conduct discovery regarding the reasons for implementing the policy and the reasons for terminating it.

Because the Court has concluded that Mr. Hogue should be permitted the opportunity to conduct this limited discovery, the Court will deny the pending summary-judgment motion without prejudice. At the conclusion of the 90-day discovery period, Defendants may renew their motion for summary judgment.

To streamline the process, however, the Court will resolve two motions that are related to the summary-judgment motion at this time: (1) Plaintiff's Motion to Strike Dana Maybon's Declaration (Dkt. 18); and (2) Plaintiff's Motion to Exclude the Declaration of Brian Adams (Dkt. 31)).

**B.    Plaintiff's Motions to Strike and Exclude**

Regarding Brian Adams' declaration, Mr. Hogue incorrectly argues that this witness's testimony should be excluded because he cannot qualify as an expert witness. Dkt. 31 at 2. At this summary judgment stage, however, the only relevant question is whether Mr. Adams' testimony comports with Federal Rule of Civil Procedure 56(c)(4) ("An affidavit or declaration used to support or oppose a

motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."). The Court finds the declaration does comport with Rule 56(c)(4) because it is based on Mr. Adams' personal knowledge and experience as ISCI's Facility Investigator from 2014-2016, his current position at IDOC, and training associated with both positions. Dkt. 15-5. Furthermore, Mr. Adams can testify to his familiarity with the Mail Policy and its purposes based upon his use of the Mail Policy during his employment with IDOC. *Id.* Similarly, the exhibits attached to Mr. Adams' declaration appropriately provide context for that declaration, although they are not directly relevant to Defendants' summary judgment motion. The documents' appearance, contents, substance, and all the circumstances are sufficient to authenticate the documents at this stage of litigation. Fed. R. Evid. 901(b)(4). Therefore, Mr. Hogue's objection and motion to exclude the declaration of Brian Adams is denied.

Likewise, the Court will deny Mr. Hogue's motion to strike portions of Dana Maybon's declaration. Plaintiff's argument that this witness "deliberately testified in a matter that was intended to convey a false and misleading factual claim," (Dkt. 18, at 4) are not persuasive. If plaintiff chooses to do so, in response to a renewed summary judgment motion, he may argue that this witness's testimony is not

persuasive, but he has not put forward any basis for striking the testimony. The motion to strike will therefore be denied.

**C.     Plaintiff's Motion to Amend**

Rule 15 of the Federal Rules of Civil Procedure governs amendments to pleadings. It states that in the circumstances presented here, a party may amend its pleadings only by leave of the Court or by written consent of the adverse parties. In the Ninth Circuit, not only should the Court "freely give leave when justice so requires," the policy is to be treated "with extreme liberality." Fed. R. Civ. P. 15(a); *Morongo Band of Mission Indians v. Rose,* 893 F.2d 1074, 1079 (9th Cir.1990). The Court considers four facts which can justify denying leave to amend: (1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility. *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001) (citing *Griggs v. Pace Am. Group, Inc*. 170 F.3d 887, 880 (9th Cir. 1999). Although all these factors contribute to the analysis of whether a plaintiff should be allowed an opportunity to amend, futility alone can justify denying such an opportunity. *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004). A claim is futile when it will inevitably be defeated on summary judgment. *Johnson v. American Airlines, Inc.,* 834 F.2d 721, 724 (9th Cir. 1987).

Mr. Hogue's proposed amendment corrects the "typo" on the Complaint regarding the date his greeting card was seized. Consistent with Rule 15, the Court

grants in part Mr. Hogue's motion to file an amended complaint to correct the date of the incident to April 7, 2017. Dkt. 24 at ¶ 58.

Mr. Hogue's proposed amendment also seeks to add additional defendants: Josh Tewalt in his official capacity; and Ashley Dowell, Jeffrey Zmuda, and Henry Atencio in their official and individual capacities. Furthermore, Mr. Hogue seeks to include Fourteenth Amendment due process claims.

The Court will deny plaintiff's motion to amend the complaint to add due-process claims. In responding to this motion, defendants point out that in his supporting affidavit, Mr. Hogue has conceded he was, in fact, afforded due process. Mr. Hogue did not respond to this argument.

As defendants point out, the Mail Policy met required minimum procedural safeguards. When incoming inmate mail is withheld, the recipients' Fourteenth Amendment rights demand that the inmate be notified and that there is an appeal process to a prison official other than the one who made the initial exclusion decision. *Krug v. Lutz*, 329 F.3d 692, 698 (9th Cir. 2003). Mr. Hogue's affidavit shows these safeguards were maintained. He acknowledges that he received notice of the Mail Policy in December 2016 and that he had responsibility to convey the changes to his regular correspondents. Dkt. 30-1 ¶ 6; Dkt. 30-2. Within days of the seizure, Mr. Hogue received notification. Dkt. 30-1 ¶ 11. Mr. Hogue then appealed the seizure in a two-step appeal process. Dkt. 30-1 ¶14-17. Thus, in this instance,

the Mail Policy met all constitutionally required procedural safeguards.

As for the remaining claims, defendants point out that these claims will be futile because defendants will be entitled to summary judgment. As noted above, at this time, the Court is denying the motion for summary judgment without prejudice. As such, the Court will also deny plaintiff's motion to amend the complaint to add new defendants without prejudice. Plaintiff may renew this motion at the conclusion of the limited discovery period outlined above.

**D.     Plaintiff's Motion for Contempt & Sanctions**

Mr. Hogue asks the Court to find Defendants in contempt of court and to impose sanctions for their alleged failure to comply with a discovery order. Under Federal Rule of Civil Procedure 37(b)(2)(vii), when a party fails to obey an order to provide discovery, the Court may impose sanctions and/or treat that failure as contempt of court. Two standards limit the discretion a district court may exercise under this rule: "first, any sanction must be 'just'; second, the sanction must be specifically related to the particular 'claim' which was at issue in the order to provide discovery." *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982).

On February 26, this court entered an order instructing Defendants to reexamine their disclosures and either supplement them within 14 days of the order or notify Mr. Hogue that nothing would be disclosed. Although Defendants

completed the review and found they had disclosed all relevant information through discovery in another pending suit brought by Mr. Hogue; however, they failed to notify Mr. Hogue before April 15 that no further discovery would be coming. While the Court looks unfavorably on this oversight, the Court declines to find Defendants in contempt or impose sanctions. To sanction such an oversight would not align with the requirement for just sanctions.

E.    **Plaintiff's Motion to Disqualify Judge**

Pursuant to 28 U.S.C. § 144, Mr. Hogue moves to disqualify the undersigned judge from this matter for bias and prejudice against Mr. Hogue as a pro se litigant who is currently incarcerated. Under 28 U.S.C. § 144, a presiding judge may be recused upon filing of a "timely and sufficient affidavit" setting forth facts establishing the judge's bias or prejudice. An affidavit is "sufficient" if the affidavit alleges that "the bias or prejudice stems from an extrajudicial source and not from conduct or rulings made during the course of the proceeding." *Toth v. TWA,* 862 F.2d 1381, 1388 (9th Cir.1988). The presiding judge determines whether the affidavit is timely and legally sufficient. *Berger v. United States,* 255 U.S. 22, 32 (1921). Only if the judge finds it so shall he "proceed no further." *United States v. Azhocar,* 581 F.2d 735, 738 (1978).

Mr. Hogue's motion is untimely. A timely motion would have been brought soon after this case was assigned to this Court in September 2017. Instead, Mr.

Hogue waited to file this motion until March 2019.

Furthermore, Mr. Hogue's affidavit is not legally sufficient. Mr. Hogue has failed to allege any extrajudicial source for any bias or prejudice. He points to various rulings that show, he alleges, that the Court is biased against him. In fact, his entire "evidentiary basis" is United States Court records. Dkt. 35-1 at 7. He also speculates that that there is a "very real possibility" that the undersigned judge "has been in contact with Defendants' counsel in this matter without notifying me of such contact and outside my presence." There is no support for this statement; to put plaintiff's mind at ease though, there have been no *ex parte* contacts between defense counsel and the Court in this matter. Ultimately, plaintiff's allegations and speculation are insufficient under *Toth*. The motion to disqualify the judge in this matter will be denied.

## ORDER

**IT IS ORDERED that:**

1. Defendants' Motion for Summary Judgment (Dkt. 15) is **DENIED WITHOUT PREJUDICE.** As explained above, Defendants may renew their motion at the conclusion of the discovery period allowed to Mr. Hogue.

2. Plaintiff's Motion to Strike (Dkt. 18) is DENIED.

3. Plaintiff's Motion for Leave to File an Amended Complaint (Dkt. 23) is **DENED IN PART** and **DENIED IN PART WITHOUT PREJUDICE** as

explained above.

4. Plaintiff's Motion for Initial Review of Amended Complaint (Dkt. 25) and his Motion for Ruling on Motion to Leave to File Amended Complaint (Dkt. 29) are **DEEMED MOOT** in light of the Court's ruling on Plaintiff's Motion for Leave to File an Amended Complaint.

5. Plaintiff's Objection and Motion to Exclude Declaration of Brian Adams in Support of Defendants' Motion for Summary Judgment (Dkt. 31) is **DENIED.**

6. Plaintiff's Renewed Motion to Defer or Deny Defendants' Motion for Summary Judgment Pending Completion of Discovery and Request (Dkt. 32) is **GRANTED IN PART** and **DENIED IN PART.** As explained above, Plaintiff has 90 days in which to conduct discovery regarding the reasons the Mail Policy was implemented and later terminated. Plaintiff may not conduct other discovery.

7. Plaintiff's Motion for Finding of Contempt and Imposition of Sanctions (Dkt. 33) is **DENIED**.

8. Plaintiff's Motion to Disqualify Judge (Dkt. 35) is **DENIED**.

DATED: September 19, 2019

B. Lynn Winmill
U.S. District Court Judge